

WENDELIN I. LIPP
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | * | |
| SUZANNE DYKSTRA, | * | Case No. 05-37925-WIL |
| | | Chapter 7 |
| Debtor. | * | |
| * * * * * * * * * * * * * | | |
| SUZANNE DYKSTRA, | * | |
| Plaintiff, | * | |
| v. | * | Adv. No. 06-01304-WIL |
| MARGARET SPELLINGS, et al., | * | |
| Defendants. | * | |
| * * * * * * * * * * * * * | | |

**MEMORANDUM OF DECISION IN SUPPORT OF ORDER
DETERMINING STUDENT LOAN DEBT TO BE DISCHARGEABLE**

On March 15, 2006, Suzanne Dykstra (the "Debtor") filed a Complaint to Determine Dischargeability of Debts (the "Complaint") against Margaret Spellings, U.S. Secretary of Education and the U.S. Department of Education (collectively, the "Defendants"), seeking a determination that certain debts owed to the Defendants are dischargeable student loan debts pursuant to 11 U.S.C. § 523(a)(8). Trial on this matter was held on January 26, 2007. The Court

has reviewed the pleadings, exhibits, testimony of three witnesses, and the record in this case, and finds that the relief sought by the Debtor will be granted.

**I.     BACKGROUND**

The Debtor is 51 years old and has no dependents. In 1977, she graduated from college with a Bachelor of Science degree in bio-engineering. In 1981, she joined the U.S. Army Reserves and attended the Uniformed Service University of Health Sciences in Bethesda, Maryland. Due to psychological and physical problems, which will be discussed further below, the Debtor did not complete her medical degree and was terminated from the program in 1982. In 1983, she was honorably discharged from the Army Reserves.

From 1984 to 1989, the Debtor worked as a live-in childcare provider for a family with two children in Chevy Chase, Maryland. In 1988, she returned to school to pursue a graduate degree at the University of Maryland. She funded her education through several student loans, which are the subject of this adversary proceeding. In 1996, the Debtor began a doctoral program. However, conflicts arose between the Debtor and her advisor. In 1999, the advisor resigned and she could not find a replacement. Without an advisor, she could not finish her doctorate and the University of Maryland terminated her from the program.

After that, she worked various jobs, including retail and as a delivery driver. She now works between 13 and 30 hours per week for Westat, Inc., calling medical offices and collecting billing data as part of an expenditure survey for the company. Her net monthly income is about $1,150.00. Her monthly expenses total about $1,463.57. She has minimal expenses and does not live extravagantly. She rents a basement apartment in Ijamsville, Maryland for $575.00 per month. Included in this amount is heat, electricity, internet access and satellite service for the

television. Her other expenses include sporadic payments for a cell phone provided by the Center for True Justice and Healing in return for her volunteer work ($5.00 - $25.00), gas for the car, and groceries ($220.00 - $240.00). She spends about $65.00 per month on her personal care and on her three cats. She drives a 1998 Saturn that has not passed a Maryland emissions test since 2005. Her student loan debt totals about $180,000.00. She has made some payments on these loans and has participated in an income contingent repayment plan. She testified that when she can, she pays approximately $10.00 per month on her student loan debt.

On its face, this appears to be a case in which a college educated, intelligent woman has not found work in a field commensurate with her education level or in her chosen field, and that she is in financial distress, a common situation in bankruptcy cases. However, at trial, the Debtor proved that she has suffered some form of mental illness most of her life. Her problems have worsened over the years and have manifested themselves in physical ways as well. She has been homeless, she has been hospitalized, she has been assaulted. Since 1982, she has been treated for various medical problems and has been diagnosed with severe anxiety and depression, panic disorder, borderline personality disorder, urinary tract infections, irritable bowel syndrome, and sinus and thyroid problems. The Debtor testified that the medications prescribed to her for her mental illness did not alleviate all of the symptoms and, in some instances, only exacerbated both the mental and the physical problems. She had a negative experience with at a psychiatrist and has not been under psychiatric care with any regularity as a result. She sees a physician who prescribes her medication which does not eliminate the depression or panic attacks. According to

the Debtor, she is depressed most mornings and it takes time for her to ready herself for work. She testified that she is has on average between seven and thirty panic attacks per week, the aftereffects of which can last for weeks, or months, depending on their severity.

In 2006, she retained Dr. Leonard J. Hertzberg to perform an assessment of her in preparation for trial. He examined her in June and July of 2006 and reviewed her medical records from 1995 through early 2006. At trial, he was qualified as an expert. He testified that the Debtor had been diagnosed with the following: major depression, panic disorder, ulcerative colitis, recurrent herpes simplex viral infections and obesity. He also found that she is at high risk for coronary artery disease.

The Debtor's early morning depression, frequent panic attacks and fear interfere with her ability to work a regular schedule or to have any semblance of a social life. She has never been married and she has no children. She lives in a basement apartment with no working stove, three cats, a computer and a television. Reverend Wayne Price, Sr., her pastor and counselor since 1984, gave her a cell phone so that she can reach someone when she has a panic attack. She is afraid to get professional help. She is afraid to maintain accounts in her name for fear that collection efforts will set off panic attacks. Her employer allows her a flexible work schedule to accommodate her psychological and medical problems. The Debtor testified that due to all of these circumstances, she has been unsuccessful in her efforts to find employment or to use her education and background in her chosen field**.**

## **CONCLUSIONS OF LAW**

The Debtor seeks a determination that her student loan debt is dischargeable as an undue hardship under 11 U.S.C. § 523(a)(8). That section provides that a discharge under section 727 of this title:

> "does not discharge an individual from any debt – unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for:
>
> (A)(i) an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship or stipend; or
>
> (B) any other educational loan that is a qualified educational loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual."

11 U.S.C. § 523(a)(8).

The test in the Fourth Circuit for "undue hardship" is a stringent one. The Debtor must establish that: (1) she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and any dependents if she is forced to repay the loan; (2) additional circumstances show that her inability to pay the loan is likely to persist for a significant portion of the repayment period of the student loans; and (3) the Debtor has made good faith efforts to repay the loans. *Educational Credit Mgt. Corp. v. Frushour (In re Frushour)*, 433 F. 3d 393, 400 (4th Cir. 2005) (adopting the "Brunner Test" in Chapter 7 cases and citing *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 46 B.R. 752, 756 (S.D.N.Y. 1985)). The Debtor must prove all three factors by a preponderance of the evidence. *Id*. Mere inability to repay the loan is not sufficient; if that were the case, all debtors would be able to prove undue hardship. *Id*. at 399.

The Debtor must show that the unique or extraordinary circumstances which created her hardship make it unlikely that she will ever be able to honor her obligations. *Burton v. Educational Credit Mgt. Corp. (In re Burton)*, 339 B.R. 856 (Bankr. E.D. Va. 2006) (quoting *Lezer v. N.Y. State Higher Educ. Servs. Corp. (In re Lezer)*, 21 B.R. 783, 789 (Bankr. N.D.N.Y. 1982)).

In order to determine whether or not the Debtor can maintain a minimal standard of living, the Court must evaluate, at the very least, whether her monthly expenses exceed her income. *Id*. at 871. This does not mean subsistence at the poverty level but is reviewed on a case-by -case inquiry into the Debtor's situation. As to the second factor, the Debtor must show that her circumstances are likely to persist for a significant portion of the repayment period on her loans. *Frushour*, 433 F. 3d at 401. The Court also evaluates a variety of "additional circumstances," including: (1) whether or not there are any dependents in the Debtor's care; (2) the Debtor's level of education and the quality of that education; (3) the Debtor's lack of marketable job skills; (4) age or other factors that would prevent retraining or relocation in order to increase her income; (5) lack of assets; (6) underemployment; (7) number of years remaining in the Debtor's work life to allow repayment of the loan; (8) maximum income potential in the Debtor's chosen educational field; and (9) illness or incapacity. *Id*. at 873 (internal citations omitted). Importantly, discharge based on medical disability requires corroborating evidence to substantiate "what would otherwise be merely self-supporting testimony by the debtor." *Id*. at 876. The third factor requires the Debtor to show that she is has made an effort to obtain employment, maximize her income, minimize expenses and make payments when she can. *Id*. at 884.

The Court finds that the Debtor has satisfied her burden with respect to all three factors of the Brunner Test.  As discussed, the Debtor earns about $1,150.00 per month and her monthly expenses total about $1,463.57.  The parties did not dispute these amounts or that her minimal expenses exceed her income.  The Debtor established at trial that she is on the edge, financially, physically and mentally. Although she is not employed commensurately with her education and abilities, this is not the Debtor's desire; it is necessitated by her condition.  She cannot work full time and her current employment is probably the best economically, considering her need for a flexible work schedule.  Dr. Hertzberg testified that while she may have contributed to the exacerbation of her psychological problems due to her unwillingness to seek psychiatric treatment, the damage has been done and her situation is not likely to improve.  He further testified that it was highly unlikely that the Debtor would have the capacity to work in a better or more advanced job even with medical care and a healthier lifestyle.

There is no dispute that the Debtor has tried to repay her loans, through consolidation, through the contingent income program and on her own.  She has established that, despite a college education and some doctorate work, she will never be a doctor and she is unlikely to improve her employment opportunities.  All of these facts, together with the evidence presented about her age, physical and mental condition leads this Court to conclude that the Debtor is probably earning as much as she can and there is very little prospect for change in the future.

For the foregoing reasons, the Court finds that the student loan debt imposes an undue hardship on the Debtor and,  pursuant to 11 U.S.C. §523(a)(8), the debt will be discharged.  A separate Order will be entered contemporaneously with this Memorandum.

cc: Debtor
   Counsel for the Debtor - Mary Garrett Bunker, Esq.
       Amala Nath, Student Attorney
       Drew Newman, Student Attorney
   Defendant
   Counsel for Defendant - Larry D. Adams, Esq.